Mr. Snyder. Good morning, Your Honor. It's a privilege to appear before the Court today. If possible, Your Honor, I would like to reserve five minutes of time. Okay. I assume that the Court does not need further recitation of the facts in this matter. And I'd like to spend most of my time discussing the first and second assignments of error, but I'd also like to touch briefly on the fourth assignment of error, which has to do with the failure to award liquidated damages. Does the Court, first of all, have any specific questions about the liquidated damages issue that I can answer? As the Court knows, the policy is in favor of awarding liquidated damages. And that is set forth in our bond decision, which is cited in our brief. Specifically, in this case, the Court should have awarded liquidated damages because, in fact, it made a finding that there was no good faith. And I would refer the Court to Excerpt of Record 18, which are the comments made by the Court after the verdict, at which point Ms. Morf, my opponent, challenged the jury's award of front pay damages and said that the Court can make a finding that there was no good faith and, therefore, no front pay should be awarded. And the Court said, well, I do find the front pay should be awarded. Are you arguing that that is a specific finding by the district court that the county acted in bad faith? Well, I'm certainly saying that it was raised and passed upon before Your Honor. And I believe it can be interpreted in that way. I believe that it was the Court's duty to make specific factual findings as to whether or not liquidated damages should be awarded. On that point, if we agree with your argument that liquidated damages needs this, you need to make a finding one way or the other. And in this case, I think you asked the Court, are you going to do it? And the Court said no. He said no. And then that was sort of the end of it. Would the remedy really be for us to remand to the district court so that we're not trying to read between the lines one way or the other as to what statement means that you just quoted? I believe that the Court could do two things, Your Honor, that the Court could certainly remand this to the district court to enter a finding of liquidated damages doubling the back pay amount, or the Court could remand this matter to the district court to make specific factual findings. I'm simply pointing out to the Court that the issue of good faith was really considered below. I think the meat and potatoes, though, of what we're here about today, though, is the first and second assignment of error. And with the Court's permission, I'd like to move on to that. I'd like to apologize for being out of breath when I started. I have asthma, and sometimes it gets to me. Concerning the first assignment of error, the appellate here contends that the Court originally made the right decision in submitting the issue of front pay to the jury, and that the Court committed error when it decided after the trial that front pay was not a jury issue. I appreciate the Court referring counsel to three cases that had not previously been cited in the briefing. One, of course, is the chauffeur's local case. And as the Court well knows, in the chauffeur's local case, the Court found that back pay sought by the respondent was not money wrongfully held by the union, but were wages and benefits that respondent should have received, and that the relief was not restitution and, therefore, was not equitable damages. And respectfully, the same can be said on the issue of front pay here. Front pay here are the wages and benefits that the plaintiff would have received had defendant not discriminated against her and fired her for taking protected leave. I guess the difficulty is that when they talk about pay and these other situations being equitable, if she had been put back in her job, then she would have gotten this money, correct? So it's an alternative to, you know, it's a reinstatement, if you will, but it's money in lieu of reinstatement, isn't it? I think it's very clear, Your Honor, that reinstatement in and of itself is an equitable remedy that is within the discretion of the Court. What I would like to point out to the Court, though, is that there are actions of law, many actions of law, including contract claims, in which there are both issues of equitable relief that could be sought, such as specific performance, and issues of damages. And as the Court knows, Title VII to the United States Constitution requires a jury trial on the merit in those actions that are analogous to suits in common law, and money damages is the traditional form of relief offered in courts of law. Both Smith v. Barton and Chauffeur's Union talked about the sort of inquiry that the Court needs to make, and the emphasis seems to be on the second inquiry, and that is what is the type of damages that are being sought. And in terms of money damages, it appears that money damages are the traditional form of relief offered in the courts of law. Both parties in the Traxler case, which is before you, tried this case on the issue of money damages. The verdict form that was submitted by the appellee in this case was related to the issue of money damages. If one looks at the pretrial order and the pretrial submissions, money damages were sought throughout. The Court concluded that there was enough friction that reinstatement was never an issue, and really neither side ever advocated for reinstatement during the trial. So this was an old-fashioned jury trial about money damages, and it's really no different in this particular case, whether we're talking about a contract action or whether we're talking about a tort action, in which we have both past and future economic damages. But it all arises under the Family Medical Relief Act, right? Yes, sir. And that sort of claim didn't exist prior to its enactment. I agree, Your Honor. It did not exist. But in looking at it, I believe it's the Smith case, which was the Rehabilitation Act remedies. The Court in Smith went as far as to say that this action under the Rehabilitation Act is more like a contract action, which did exist centuries ago. And so, therefore, what we're going to do is we're going to look at the remedies that are being sought, and that that is really the most appropriate inquiry to make under this case. For example, under a contract theory, the remedies are generally legal. There may be equitable remedies, such as liquidated damages or specific performance. But really what we're looking at is expectation or reliance. And in this particular case, the plaintiff had an expectation that she would have continued employment, and she relied upon the ability to take protected medical leave, much to her disadvantage when her employer did not respect the law. Could I ask you to go back to the statute itself, which is the starting point, and then, of course, we get off on the cases. But in the statute under liability, you get damages equal to, and then it tells you what you get, which is basically lost wages and other compensation of actual monetary loss sustained. So that's basically what it says you get as damages, and it doesn't make any reference to future until you get to, so I guess I'll call it the catch-all phrase. It says, for such equitable relief as may be appropriate, including employment, reestatement, and promotion. So why wouldn't these front pay monies, since they don't seem to fall under A as damages, because it doesn't have anything there, why don't they fall under B? Well, respectfully, Your Honor, I think that the court could interpret Section A of the statute to include both past and future economic damages. But even if we were to analyze- Why would we do that? Well, because it is a loss. It doesn't matter whether it occurred in the past or not. It is verifiable what her losses are in the future as best anyone can verify it, based upon her employment history since trial, excuse me, since termination up to the time of trial, and her employment prospects in the future. I guess the reason I have a little trouble with that, and I'm just trying to figure out the statute, is the word lost is a past tense. It already happened. Well, I'm- And then it says, well, if you didn't find yourself in that situation, where you actually lost money from your employer denying you a wage, then you could get actual damages. So it has to kind of fit in there. So just help me out on- Of course. What would I go to to say that your interpretation probably makes the most sense? I think that the loss could mean both past losses or future losses. It is very, very routine for- That might be true if it said loss. Pardon me, Your Honor? That might be more true if it said loss instead of lost. Or you don't agree with that? Well, I think that- nor does it really say that a plaintiff can recover in Part B future economic damages, I believe. But somehow- Are you yourself out of that? Somehow we need to figure-we need to fit this in in some way. And so I'm certainly not trying to avoid your question, Judge McKeown. I'm simply trying to say that, for example, if we had a tort case where an individual had substantial medical losses up through the date of trial, it would be very common for an economist to come in and say, and this person will have losses in the future. So I don't know exactly how to answer your question, Your Honor, but I think that we must be able to fit this in here some way. And maybe that is why these other cases that talk about when you look at the sort of relief that's sought, that that is most instructive for deciding whether or not it's a matter at law or in equity. Would it be permissible for the Court, if I moved into the second assignment of error, which has to do- Sure. Thank you, Your Honor. It's your time. Assuming, for purposes of our discussion today, that the Court found that front pay was not, as we are advocating, a legal remedy but was an equitable remedy, the Court would still need to review this district judge decision for an abuse of discretion. And what is most troubling here, Your Honor, as you know, the Court entered a revised judgment or verdict in this matter for $267,000 on front pay rather than the approximate $1.5 million ordered by the jury. There is no support in the record as to how the district judge reached this decision. If we look at the very lowest estimate of future damages that the economist came up with, and he did work out a number of scenarios depending upon whether or not she remained in her management job at the Sheriff's Office or whether she had her lower level job in the Central Human Resources Office, the lowest estimate of future economic damages was $670,746. That's at an excerpt of Record 98. I looked at what the judge said in terms of his reasoning, and with all due respect to the district judge, who I think is a very, very fine trial judge, in reviewing the record, respectfully I submit to the Court that his findings are not supported by the evidence in this case. The first thing he said is that the appellant gave no testimony about her efforts to find a full-time job more equivalent to her work at the county. That is actually incorrect. Excerpt of Record 115-132 details her efforts to find other work and an equivalent position, and she was unable to find that. The judge also said that there was no testimony from anyone regarding her employment potential, which is also incorrect. During the testimony that was taken at trial from the economist, he specifically covered this issue, and this is an excerpt of Record 96 and 97, and he pointed out that she was an older worker. She was 48 going on 49 years of age. She had a disability. He considered it to be a impediment to her obtaining employment, that she had been terminated from a job, and most importantly, the economy was headed into a recession, which everyone knows, anyhow, even without expert testimony. And he also assumed that the best job that she was going to get in terms of alternative pay or getting close to this approximate $34 an hour job she had before would be full-time work at $15 an hour, and he included that in all of his calculations, and that is at Excerpt of Record 101. The judge said that the plaintiff is young. That's incorrect. The judge said that he assumed that the economist had only used a minimum wage of $7.50 per hour in making his calculations. That is very incorrect. Dr. Sheehan assumed that she would get a full-time job earning $15 an hour. That's Excerpt of Record 101. There seemed to be some general belief that the economist had made a mistake, and that is very incorrect as well. We're surprised that the appellee continues to argue that. I see that my time is almost up. It is up. Thank you very much, Your Honor. Thank you. Thanks for your argument. One from the county at this time. Good morning. May it please the Court, my name is Jenny Morf, and I represent Multnomah County in this action. As Mr. Snyder pointed out, I think the main issue that we're going to be looking at today is whether or not front pay under the FMLA is an equitable remedy to be decided by the court as an equitable remedy or by the jury. And we have a few frameworks that we can look at in determining that question. Number one, we look right to the statute. And as Judge McKeown pointed out, when we look at the statute, the first section of the statute, Section A, provides for damages. And that's in the past. They are denied or lost. The second section of... Wait a minute. That could mean in the past, but once somebody's been fired, they have lost or been denied any of the pay that they would have gotten in the future as well. I mean, that has now been denied them, right? It's not an ongoing violation. Nobody's really going to use that kind of a fiction here. Once the job's gone, it's gone. That's correct, Your Honor. Once it's gone, it's gone. But when we're looking at the sort of remedies that are available in discrimination or retaliation, interference-type cases, we look at damages that occur up until the date of trial and then damages that occur after. So back pay under your construction, back pay would be payable under A as damages. Front pay would have to be equitable. That's correct, Your Honor. Now, in the Pollard case, the court says that when reinstatement is not available, then you may collect back pay up until the time that you reinstate as compensation for failure to reinstate. And then if you do not reinstate, then you may get front pay, and both of those are equitable. So in the Pollard case, the Supreme Court seemed to treat even back pay as an equitable remedy. That's correct, Your Honor, but Pollard was under Title VII. And so although the damages provisions of the FMLA and Title VII are similar and should be interpreted similarly to the extent possible, they are, in fact, there are differences in the statute. Yeah, I think that my – and you've got two different lines of cases that lead us in very different directions. Each one of you has one line of cases to rely on. I think my point is that the Supreme Court has even characterized back pay as an equitable remedy. That's correct. And it's clear that we have other cases that have clearly said that front pay is a form of damages. So, as I said, each one of you seems to have something to rely on here. So your position is back pay comes under damages, front pay has to be equitable. Under the FMLA, correct, Your Honor. There's no dispute that under Title VII both back pay and front pay are equitable damages to be decided by the court. But because of the way that the FMLA is written, we would say under Section A, that's where back pay is going to fall. And it's under Section B where we have the equitable remedies, such as reinstatement. And it is – there is no doubt, and I've heard no argument or cases, that front pay is not a substitute for reinstatement. That's my understanding of the law, and I know no cases. What do you do with this little tagline in Cassino, which was the Ninth Circuit case that says that front pay is decided by the jury? Your Honor, in Cassino, that was a 1987 case. That's under the ADEA. Cassino relied on the Maxfield case, which was a Third Circuit case. And when we go back and look at the reasoning in Maxfield, they don't do a thorough analysis of whether front pay is an equitable relief to be decided by the judge or the jury. It's just kind of a passing reference. What I find interesting is that Maxfield, again, is a Third Circuit. That's a 1985 case. Just in 2009, the Third Circuit has come out with another case. That's the Donlan case. It's Donlan v. Phillips, and that's 564F3-207. That's a 2009 case once again, and that says that front pay is a question for the court. So Cassino, which is older Ninth Circuit law, relies on Third Circuit jurisprudence, which now even the Third Circuit doesn't rely on. Is that in an ADEA or FMLA? Title VII, Your Honor. Okay. Title VII. So the Donlan case is a Title VII case. It says that front pay is equitable? That's correct, Your Honor. Well, that wasn't really a surprise, was it? I mean, we already knew that. Well, yes. But we had lots of other Title VII cases that already told us that. They fixed up, that the Third Circuit fixed up their own reasoning, which the Maxfield case didn't do sufficient reasoning on. I would also point out that Court 2, we have a new FMLA case in the Fourth Circuit, and that's Dotson v. Fizer, and that's 558F3-284. And that's an FMLA case, and in that case, the Fourth Circuit says that front pay is equitable relief for the court to decide, and that's directly on point or at least instructive to the Ninth Circuit. That's a 2009 case? Yes, Your Honor. So it's obviously not in your brief? No, Your Honor, no, it's not. We'll do a gum sheet after argument. Okay. Talk to the clerk. Okay, thank you, Your Honor. Give a copy to your opponent. Okay. So first we look to the statute to determine whether or not it's the court or the jury that's going to decide equitable remedies, and it would be the county's position that the FMLA on its face says that equitable remedies such as reinstatement, those are going to be issues decided by the court. Now, but that's not the end of the analysis, because there could be a Seventh Amendment right to a jury trial. And so as counsel stated and as we have case law, we have the Chauffeur's case out of the Supreme Court and others, which list out, first of all, we look back to the 18th century jurisprudence to see if this is an action that's in law or in equity. As we see from the Ninth Circuit case in Smith, that's not really a dispositive inquiry when we're looking at a discrimination or retaliation type case, because those actions didn't exist at that time. But we still go, we can go to the second prong of the case, which is the nature of the remedy. And this is where the case law falls, in my view, very much in favor of the county's position, because the nature of front pay is in lieu of reinstatement, which is under Title VII, the ADA, FMLA, FSLA. We can go down the line of the discrimination cases, but this is an equitable remedy for the courts to decide. So when we look at the Pollard case, it says that front pay is an equitable remedy. It's not part of compensatory damages. In the Chauffeur's case, they were looking at Title VII and looking at back pay, but the issue was, what's the nature of the remedy? Where the nature of the remedy is equitable, it is a court issue. And other cases which are cited in the briefing, I don't need to go into detail on those cases now, unless the court has specific questions. But we do have the trend amongst the circuits. So we have, with regard to front pay, we have the 2nd Circuit, the 3rd, the 4th, the 7th, the 8th, and the 10th Circuit all saying that where front pay is an equitable remedy, it is to be decided by the court. And those are in FMLA cases? Those are in Title VII, ADA, FMLA, many of the different discrimination statutes. But when we're looking, when we're assessing the provisions of these discrimination statutes, the cases are to be interpreted in pari passus. So they stand together. And we can look to the 9th Circuit case in Wells v. Clackamas for that. And the legislative history of the FMLA itself says that the damages provision is modeled after FSLA, which is the Fair Labor Standards Act. And then we have cases that say that FSLA and Title VII should be interpreted together. So the cases in Title VII and the other discrimination and retaliation cases can guide us in determining whether or not the judge or the jury decides an issue of equitable remedies. Let's assume that, or assume for the purpose of my question, that it was proper for the court to decide the issue of front pay. Judge King seemed to limit that to, what, four years of pay? Is that the calculus he went through? Between three and four years of front pay, Your Honor. How do we get to that? How did he get to that? Well, when we look at the If it's a substitute for reinstatement. Correct. I thought reinstatement meant you got your job back and you kept your job for a long time. That's what reinstatement would mean. But when we're using front pay as a substitute for reinstatement, we look for, it's basically a bridge. So we're providing the plaintiff with a bridge into the future so that they can seek and gain additional employment. It's not the lottery. It's not a windfall. This plaintiff was 48 years old at the time of trial, I believe. So she had, by her own expert, another 12.75 years of work history. She said she was going to work another 16 years. So what the judge was looking at is what is a reasonable amount to pay for front pay, for future damages, to bridge Ms. Traxler into the future? So he assumes she's only going to have that job for four years? Well, no. Front pay is a substitute for reinstatement, but it's not. If front pay was equal to reinstatement, then we would always just award someone something. What does substitute mean? Substitute, well, it means that it's going to be instead of reinstatement. The reinstatement, when we're giving front pay, we don't have cases where, typically, where plaintiffs are awarded front pay for the rest of their working life. Instead, they're provided a bridge into the future so that they can seek additional employment. And in this case, it's between three and four years of front pay from the date of trial forward so that she can find alternative employment. The judge held that it was unreasonable to assume that she would be unable to find work for the rest of her life. That's at record 11 and at 190. Ms. Traxler testified that she was college educated. She was skilled in human resources. She testified that she could do many jobs, and there were testimony by her coworkers that she did good in her human resources functions. What's the standard of review for the judge's award of front pay? Your Honor, thank you for pointing that out. In the briefing, we had said abuse of discretion, and I think that that is the correct standard when we're assessing whether or not to decide front pay. But when we're looking at the calculation of front pay, that's a factual determination, and under the Goddard v. Amtrak case, it should be clear error. So when the court is reviewing the calculation of damages, the standard of review would be clear error. Did Judge King commit clear error in awarding Ms. Traxler a quarter of a million dollars in front pay? What about if the judge committed clear error in some of his underlying premises? So, for example, he said she wouldn't really go out and look for a job, and, in fact, her testimony was the opposite. Or he said she was young, but we know from the ADA and also reality that even though we like to think of 48, 49 as young, in the job world, it's not young. Those kind of things where his premises were actually faulty, and were we looking at findings, we would say they were clearly erroneous. Well, what we look at are all of the facts that were presented at trial. And when we look at all of the facts that were presented at trial, Ms. Traxler said that she was going to be working for another 16 years. So in the course of a work life where you have 16 years of full-time employment ahead of you, I don't think it's clear error to say that someone is young in that context. I mean, she still has another half of her work life ahead of her. With regard to her skills and abilities and her job search, Ms. Traxler said that, yes, she had looked for jobs, but when we look at all of the testimony that was presented at trial, the number of applications that she had submitted were few. She had instead opted to do volunteer work and work for a temporary agency, part-time and not totally full-time. So when we're looking at the reasonableness of her job search, it's the judge acting as fact finder who's in the position at that time to assess all of the evidence that was put forward. When was this case tried? This case was tried, I believe, in 2008, Your Honor. When? I don't recall off the top of my head, Mr. Snyder. March. March? That sounds about right. There was testimony at trial that there were many jobs in the human resources field that were available in government agencies kind of from top to bottom because of retirements that were going on at that time. That was from the director of labor relations at the county. And then also when the judge was looking and assessing the expert's determination on damages, there were many questions that were raised by the expert's damages. Did he use the proper hourly rate? He was cross-examined on that and testified that if he, in fact, had used the wrong hourly rate, that all of his calculations from there on out would be suspect. And, in fact, he used an hourly or yearly salary of over $70,000 when, in fact, Ms. Traxler made $68,000 a year. So he started with the wrong information, he did his calculations, and as the judge pointed out, his assumptions were questionable and appeared to be based on a theoretical worst-case scenario without any evidentiary support. And that's at Excerpt of Record 9. So even when we look at the expert's calculations, if the judge does his calculation in the way that he did, he's awarding between three and four years of front pay. This is sufficient under the law to allow Ms. Traxler to move forward to find alternative employment and meet the new challenges in her life. Okay. You actually used up all of your time in your argument. We'll give you one minute for rebuttal. Thank you. Thank you for your help, Your Honor. It is, again, a privilege to appear. It's not help, it's just equity. Thank you, Your Honor. I would like to point out that Abrams was decided after the court's decision in Pollard that Title VII and FMLA are not analogous. Under Title VII, back pay goes to the court. Under FMLA, it goes to the jury. There's no cap under FMLA. I'm rather surprised that counsel continues to argue that the economist made a mistake. This is set forth on Excerpt of Record 110. He relied upon her W-2s in making his decision. Finally, there was substantial evidence in the record of her job search. The economist actually assumed she'd be in a better position earning $15 an hour and working full time than she ever reached at the time of trial. Thank you very much. Thank you. The case just argued will be submitted for decision. Thank you, counsel, for your arguments.
judges: Hawkins, McKeown, Bybee